IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 9:26-cv-80066

KEITH DONNELL FORBES,

    Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION LLC,

    Defendants.

**JURY TRIAL DEMANDED**

## COMPLAINT

Keith Donnell Forbes ("Plaintiff" or "Mr. Forbes") brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"), (collectively, "Credit Bureau Defendants") and states as follows:

### INTRODUCTION

1. Plaintiff, a victim of identity theft, brings this action against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

### JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this District under to 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff Keith Donnell Forbes ("Plaintiff") resides in Coral Springs, Florida, and qualifies as a "consumer" as defined and protected by the FCRA.

5. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California.

6. Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FACTUAL ALLEGATIONS

### Identity Theft

7. On or about May 2021, an unauthorized individual ("Fraudster") applied for a consumer credit account with Credit One Bank, N.A. using Plaintiff's personal identifiers without his consent, knowledge, or authorization.

8. Subsequently, the account was sold, assigned, or otherwise placed for collection with Midland Credit Management, Inc. under Account No. 31285XXXX, and was reported as a collection account in the amount of $965.

9. On or about July 24, 2021, an unauthorized individual opened a consumer credit account with Celtic Bank using Plaintiff's personal identifiers without his consent, knowledge, or authorization.

10. The account was then sold, assigned, or otherwise placed for collection with Spring Oaks Capital LLC, and was reported as a collection account in the amount of $755.

11. Plaintiff did not apply for, open, or authorize any account with Celtic Bank, nor did he incur any obligation with Spring Oaks Capital LLC.

**Plaintiff Receives Consistent Denials Despite Exceptional Payment History**

12. Plaintiff, a financially responsible consumer, has maintained an exceptional payment history on his credit accounts, including an active mortgage and multiple credit cards in good standing.

13. Being financially responsible, Plaintiff reasonably believed that he would be approved for future credit applications given his consistent payment history and lack of outstanding delinquencies.

14. However, when Plaintiff applied for a Costco credit card he was denied on at least three separate occasions.

15. Plaintiff was confused by these repeated denials, as he had never been delinquent in his credit obligations and had no outstanding balances with any financial institutions.

**Plaintiff Obtains Copies of His Credit Reports from Annual Credit Report July 2024**

16. Plaintiff successfully obtained his Experian and Trans Union reports, but his attempt to retrieve his Equifax report resulted in an error.

17. Upon reviewing his Trans Union credit report, Plaintiff immediately identified information that was inaccurate and did not belong to him, including numerous telephone numbers he has never used, such as:

    a. (954) 299-3548
    b. (786) 674-5375

  c. (786) 674-7532
  d. (718) 773-1957
  e. (786) 674-7350
  f. (869) 200-2001.

18. Plaintiff's Trans Union report also reflected fraudulent collection accounts, including:

  a. Midland Credit Management, Inc.
   Account No. 31285****
   Date opened: 05/24/2021
   Pay status: Collection

  b. Spring Oaks Capital LLC,
   Account No. 11092****
   Date opened: 7/23/2021
   Pay status: Collection

("Fraudulent Accounts")

19. As for Plaintiff's Experian credit report, upon review, Plaintiff identified additional inaccuracies, including the incorrect name "*Keith Donald Forbes*".

20. Plaintiff's Experian report also displayed telephone numbers he has never used, including:

  a. (786) 674-5375
  b. (786) 674-7532

21. To Plaintiff's dismay, Experian also reported the following collection account:

  a. Midland Credit Management
   Account No.:
   Date Opened: May 24, 2021
   Status: Collection account, $965 past due as of July 2024.

22. Plaintiff was worried about the presence of this information, as he never applied for or authorized the application of such accounts, nor did he ever receive any

benefit from them.

23. On or about March 13, 2025, fearing that his identity had been stolen, Plaintiff filed an FTC Identity Theft Report regarding the Fraudulent Accounts.

**Plaintiff's Dispute to the Defendants Experian and Trans Union March 2025**

24. Concerned that the Furnishers would continue to report inaccurately to the one or more consumer reporting agencies that Plaintiff was responsible for the Fraudulent Accounts, Plaintiff determined that he needed to escalate the issue to prevent further damage to his credit files and reports.

25. On or about March 15, 2025, Plaintiff disputed the Fraudulent Accounts with Defendants Experian and Trans Union.

26. In his disputes, Plaintiff explained that these accounts were opened without his authorization, that he did not apply for, benefit from, or incur any obligation on them, and that the information associated with the accounts, such as email addresses and telephone numbers did not belong to him.

27. Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

28. Plaintiff requested that the identity theft information be blocked from his credit file.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation March 2025**

29. Upon information and belief, Defendant Trans Union received Plaintiff's dispute and request that the identity theft information be blocked from his credit file.

30. On or about March 27, 2025, Defendant Trans Union responded that it had

"received a request that included Plaintiff's information" but would not process the dispute, claiming it did not appear to come directly from Plaintiff or an authorized third party.

31. Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

32. Defendant Trans Union failed to reinvestigate Plaintiff's March 2025 dispute and failed to block the identity theft information.

33. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation regarding the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed accounts were the product of identity theft.

34. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant Experian's Unreasonable Dispute Reinvestigation April 2025**

35. Upon information and belief, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

36. On or about April 2, 2025, Plaintiff received notification online that the dispute was completed and that Experian contacted the creditor to investigate the account.

37. On or about April 11, 2025, Experian sent another notification with the completed dispute results and Experian stated that the Midland Account was deleted from Plaintiff's report.

38. On or about June 10, 2025, Plaintiff obtained a copy of his updated Experian credit report. Upon review, Plaintiff was dismayed to find that although the Midland

account had been deleted, Experian was now reporting the other fraudulent collection account, Spring Oaks Capital LLC, which Plaintiff had likewise never applied for, authorized, or benefited from.

**Plaintiff's Dispute to Defendants Trans Union April 2025**

39. Upset that his dispute was not taken seriously and concerned that eventually someone might seek to collect the approximately $1,720.43 Fraudulent Accounts, and that the continued reporting of the Fraudulent Account could jeopardize Plaintiff's access to credit or even lead to credit revocation, Plaintiff determined that he needed to dispute the Fraudulent Accounts again.

40. On or about April 7, 2025, Plaintiff again disputed with Defendant Trans Union the Fraudulent collection Accounts, Plaintiff explained that these accounts did not belong to him, were opened without his knowledge or authorization, and that he never applied for, benefited from, or incurred any obligation on them.

41. In his dispute, Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

42. Plaintiff requested that the identity theft information be blocked from his credit file.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation April 2025**

43. Upon information and belief, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

44. On or about April 17, 2025, Defendant Trans Union issued a response to Plaintiff wherein it communicated that the disputed information does not currently appear

on Plaintiff's file.

45. However, when Plaintiff requested a copy of his updated Trans Union report on or about June 2, 2025, he discovered that although the Midland Credit Management account had been deleted, the fraudulent Spring Oaks Capital LLC account remained present on his file.

46. Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

47. Defendant Trans Union failed to reinvestigate Plaintiff's April 2025 dispute and failed to block the identity theft information.

48. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

49. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

## PLAINTIFF'S DAMAGES

50. Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

51. Plaintiff communicated directly with Furnishers on at least one occasion and explained that the Fraudulent Accounts were fraudulently opened and that he was the victim of identity theft.

52. Plaintiff filed an FTC ID Theft Report.

53. Plaintiff disputed with the Credit Bureau Defendants multiple times throughout 2025.

54. Plaintiff immediately identified himself as an identity theft victim and requested from that the Credit Bureau Defendants block the account information that was the product of identity theft.

55. The Credit Bureau Defendants failed to block the Fraudulent Accounts that was the product identity theft despite Plaintiff's multiple disputes.

56. Instead, the Credit Bureau Defendants repeatedly disregarded Plaintiff's credible disputes. Often responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

57. The Credit Bureau Defendants understand it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

58. Despite Plaintiff's multiple disputes to the Credit Bureau Defendants that the Fraudulent Accounts were the product of fraud, and he was a victim of identity theft, Defendants Experian, and Trans Union hardly wavered in their refusals to block the information.

59. As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Experian has continued to saddle Plaintiff with an open collection account that was the product of identity theft.

60. As a direct result of Defendant Trans Union's ardent refusal to block the

Fraudulent Account, which was a product of identity theft, Defendant Trans Union has continued to saddle Plaintiff with an open collection account that was the product of identity theft.

61. Due to Defendants' ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

62. Further, and due to Defendants' inexplicable refusal to block the Fraudulent Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Experian, and Trans Union, repeatedly, to no avail.

63. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes.

64. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

65. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

66. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time he receives another communication from Defendants. His

ongoing stress and anxiety regarding the situation have affected his and his relationships negatively.

67. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory collection account that was the product of identity theft.

68. Further, Plaintiff has consistently experienced credit denials because of the presence of the fraudulent accounts on his credit reports. For example, as a result of Trans Union's inaccurate reporting of the Spring Oaks Capital LLC account, Plaintiff's credit application with the Navy Federal Credit Union was denied. As a result of Experian's inaccurate reporting of the same account, his credit application with PNC was denied.

69. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
## (Defendants Experian and Trans Union)

70. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

71. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

72. On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

73. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a loan account and that he was delinquent on at least one occasion.

74. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

75. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

76. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to

his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory collection account that was the product of identity theft.

77. Further, Plaintiff has consistently experienced credit denials because of the presence of the fraudulent accounts on his credit reports. For example, as a result of Trans Union's inaccurate reporting of the Spring Oaks Capital LLC account, Plaintiff's credit application with the Navy Federal Credit Union was denied. As a result of Experian's inaccurate reporting of the same account, his credit application with PNC was denied.

78. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

79. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Defendants Experian and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

80. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §

1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendants Experian and Trans Union)**

81. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

82. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

83. On numerous occasions in 2024, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the Fraudulent Account that was the product of identity theft which was a very stressful situation for the Plaintiff.

84. Plaintiff disputed the identity theft information to the Credit Bureau Defendants several times to no avail.

85. On at least one occasion, Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

86. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

87. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

88. Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

89. The Credit Bureau Defendants' repeated refusals to block the disputed Fraudulent Account provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

90. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

91. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information,

before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

92. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory collection account that was the product of identity theft.

93. Further, Plaintiff has consistently experienced credit denials because of the presence of the fraudulent accounts on his credit reports. For example, as a result of Trans Union's inaccurate reporting of the Spring Oaks Capital LLC account, Plaintiff's credit application with the Navy Federal Credit Union was denied. As a result of Experian's inaccurate reporting of the same account, his credit application with PNC was denied.

94. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

95. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Defendants Experian and Trans Union)

97. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

98. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

99. Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim. Plaintiff further supported the fact that he was an identity theft victim by providing to the Credit Bureau Defendants copies of the FTC ID Report.

100. The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

101. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from er good credit rating; detriment to er credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that

was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

102. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

103. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a) Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b) An award of actual, statutory, and punitive damages pursuant to 15 U.S.C.

§§ 1681, et seq.;

(c) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: January 21, 2026

*/s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
**CONSUMER ATTORNEYS, PLLC**
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Keith Donnell Forbes*